# THE MOST WORSHIPFUL GRAND LODGE FREE, ANCIENT, AND ACCEPTED MASONS OF THE DISTRICT OF COLUMBIA *v.* GRIMSHAW.

---

EQUITY; SIMULATION OF NAMES; FRATERNAL ASSOCIATIONS.

1. The principle upon which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in the dealing with the party charged with the simulation of the name by another in a similar busi᳝ ᳝ or manufacture. (Following *Original La Tosca Social Club* v. *La Tosca Social Club*, 23 App. D. C. 96.)

2. Equity does not exercise jurisdiction to inquire into and adjudicate the right of different associations for charitable or religious objects to hold themselves out to be the original and only accredited representatives of some particular order or religious system. There must be some pecuniary injury resulting from the use of a name that may have been adopted by another, to warrant inquiry and justify relief. The injury must not be fanciful or sentimental, but real. It must be substantial, such as a court of equity, upon principles of justice, will interpose to prevent. (*Ibid.*)

No. 2007. Submitted January 5, 1910. Decided February 1, 1910.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity for an injunction and sustaining a cross bill by the appellees asking for the same relief.      *Reversed.*

The facts are stated in the opinion.

*Mr. Charles A. Keigwin* and *Mr. William S. Ellison* for the appellants.

*Mr. J. S. Easby-Smith, Mr. Wilton J. Lambert, Mr. J. H. Stewart,* and *Mr. J. A. Cobb* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal by the Most Worshipful Grand Lodge Free, Ancient, and Accepted Masons of the District of Columbia, a corporation, and its subordinates, by whatsoever name known or styled, from a decree dismissing appellants' bill for an injunction, and sustaining a cross bill by the appellees, William H. Grimshaw, W. H. Judd Malvin, W. H. Hutchinson, and their associates, parties unknown, for the same purpose.

It appears, from the admitted allegations and the evidence, that the appellees and their predecessors have for years maintained an organization of colored Freemasons, under the title

of the Most Worshipful Grand Lodge of Free and Accepted Masons of the District of Columbia, under authority emanating from a grand lodge in England. Their association has never been incorporated.

Complainant is an incorporated association. It was organized by some persons who had been members of appellees' lodge, and who were recognized as Freemasons. These had abandoned the appellees' lodge and were declared expelled on account of their action. Their charter was obtained in the District of Columbia on August 6, 1896, under a name that was changed by amendment, January 19, 1898, to Most Worshipful Grand Lodge Free, Ancient, and Accepted Masons. Both organizations have a number of members. The only difference in their names consists in the word "ancient," which is found in the title of the incorporated body. Neither association is engaged in business for profit. The objects, as alleged, are charitable and humanitarian, to be carried out according to the rites and practices of freemasonry. They operated in this way, under their several names, for ten years before the litigation began. No question of property or pecuniary injury is involved in the controversy. The single claim of each is the exclusive right to use a name indicating that it is a genuine lodge or organization of an order of Freemasons. It may be added, although it is not material, that there is no evidence tending to show that any person desiring to become a Freemason has been deceived by the name or pretensions of either organization.

The principle upon which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in the dealing with the party charged with the simulation of a name used by another in a similar business or manufacture. *Original La Tosca Social Club* v. *La Tosca Social Club,* 23 App. D. C. 96–104. Courts of equity do not exercise jurisdiction to inquire into and adjudicate the right of different associations for charitable or religious objects to hold themselves out to be the regular and only accredited representatives of some particular order or religious system. There must

be some pecuniary injury resulting from the use of a name that may have been adopted by another, to warrant inquiry and justify relief. The injury must not be fanciful or sentimental, but real. It must be substantial and such as a court of equity, upon principles of justice, will interpose to prevent. *Original La Tosca Social Club* v. *La Tosca Social Club*, supra, p. 105.

Applying these principles to the facts alleged and proved, we are of the opinion that the court was right in dismissing the complainant's bill, but erred in granting the prayer of the cross bill.

So much of the decree, therefore, as restrains the appellant from pursuing its objects under its corporate name will be reversed, and the cause remanded, with direction to dismiss the cross bill.

Each party will pay the costs incurred by it in this court respectively. It is so ordered.　　　　　　　　 *Reversed.*